

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110491 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Audrain County |
| v. | ) | Cause No. 20AA-CR00019-02 |
| | ) | |
| MICHAEL K. HUMPHREY, | ) | Honorable Jason H. Lamb |
| | ) | |
| Appellant. | ) | Filed: August 1, 2023 |

### Introduction

Michael K. Humphrey appeals from the judgment convicting him of second-degree murder and sentencing him to life imprisonment with the possibility of parole. Because Humphrey waived his right to file a direct appeal in exchange for a reduced charge and sentence, we dismiss the appeal.

### Factual and Procedural Background

The State charged Humphrey as a prior offender with one count of first-degree murder and armed criminal action in connection with the fatal shooting of Benjamin Renick ("Victim"). The evidence adduced at trial showed that Lynlee Renick, Humphrey's ex-girlfriend, was married to Victim. Renick owned a day spa, and Victim operated an exotic reptile breeding facility next to their home. Renick had confided in Ashley Shaw, the manager of the spa. Renick told Shaw that

she and Victim were experiencing significant marital issues, which Renick believed left her with no option other than to murder Victim.

Shaw testified that Renick initially planned to poison Victim. Shaw obtained twelve to fifteen Percocet pills, and Renick blended the pills into a protein shake. However, Victim only became ill and vomited after consuming the shake. Renick later sought Humphrey's address because she believed he had access to guns, and Shaw accompanied her to his trailer. Renick told Humphrey that Victim sexually abused her and that she had unsuccessfully attempted to poison Victim. She also asked Humphrey whether he knew anyone that could help her murder Victim. Humphrey told Renick that he would think about whether he knew anyone that could help.

Shaw testified that Humphrey visited Renick at the spa a few days later. Renick told Shaw that Humphrey was going to provide Renick a gun so that she could kill Victim. On the afternoon of June 8th, 2017, Humphrey picked up Renick from the spa and drove to the reptile breeding facility. Once inside the facility, Renick shot Victim eight times. Shaw testified that Renick returned to the spa approximately two hours later, took her clothes off, and scrubbed her body in the shower. Humphrey then arrived at the spa and asked Renick whether Shaw knew what had happened. Renick stated that Shaw did not know, and Humphrey left shortly after. Later, Renick asked Shaw to warn Humphrey that the police would contact him about Victim's murder. At the time, Humphrey denied to police that he had any involvement in the murder.

Shortly before Victim's murder, Renick had become involved in an affair with Brandon Blackwell. After the murder, Renick and Blackwell continued their relationship and had a child together. Blackwell testified that Renick confessed to her involvement in Victim's murder during their relationship. Eventually, their relationship deteriorated, and Blackwell was charged with violating a protection order involving Renick in 2020. Blackwell testified that he contacted

2

investigators while in jail to discuss his knowledge of Victim's murder, which ultimately led to Humphrey's arrest.

A jury found Humphrey guilty of first-degree murder and armed criminal action. Prior to the sentencing hearing, however, the State filed an amended information charging Humphrey with second-degree murder and dismissed the armed criminal action charge. At the hearing, the prosecutor and defense counsel informed the circuit court that they reached an agreement in which Humphrey would testify against Renick in exchange for the State's recommended sentence of life imprisonment with the possibility of parole. The parties described the terms of the agreement, which included a waiver of Humphrey's right to a direct appeal. The circuit court asked Humphrey whether he understood the agreement:

> THE COURT: Mr. Humphrey, you heard the State's motion and you've heard what [defense counsel] has said. Is that your understanding of what your agreement is with the State?

[HUMPHREY]: Um, I would agree with pretty much all of it, yeah.

> THE COURT: Well, pretty much all of it is not all of it. What is it that you don't agree with, if anything?

> [HUMPHREY]: I – I really honestly didn't know that my appellate rights would be waived off until just a little bit ago.

> THE COURT: Is there something that you'd like to take some more time to discuss with [defense counsel] about before we proceed?

[HUMPHREY]: Uhm –

> [DEFENSE COUNSEL]: Judge, it kind of sounds like we should. I mean if he has a misunderstanding of something we need to talk through it.

The circuit court held a recess in order for Humphrey's counsel to clarify the terms of the agreement. Humphrey and his counsel returned after the recess, and the circuit court confirmed that Humphrey understood the agreement:

THE COURT: Mr. Humphrey, so you having had some opportunity to speak more with your attorney is this your understanding the agreement and what you want to do today?

[HUMPHREY]: Yes.

Following the hearing, the circuit court entered its judgment convicting Humphrey of second-degree murder and sentencing him to life imprisonment with the possibility of parole. This appeal follows.

**Discussion**

We are precluded from reviewing the merits of Humphrey's argument because he waived his right to a direct appeal in exchange for a reduction of the charge and sentence that included the possibility of parole.[1] "Although the right to appeal is a valuable right, a defendant in a criminal case may voluntarily waive this right." *State v. Reed*, 968 S.W.2d 246, 247 (Mo. App. E.D. 1998). "A defendant waives his right to appeal where the intention to voluntarily waive appears in the record." *State v. Edwards*, 785 S.W.2d 703, 705 (Mo. App. E.D. 1990). "The right should not be deemed waived unless the record, the acts of [the] defendant[,] and all the circumstances are inconsistent with any other interpretation." *Edwards v. State*, 569 S.W.2d 779, 780 (Mo. App. 1978). However, when a defendant agrees to waive the right to appeal in exchange for a reduced charge or sentence and receives the benefit of the bargain, we will not hesitate in holding the defendant to his part of the bargain. *State v. Sanning*, 271 S.W.3d 56, 58 (Mo. App. E.D. 2008).

Here, the record demonstrates that Humphrey voluntarily waived his right to appeal in exchange for a reduced charge and the possibility of parole. The jury convicted Humphrey of first-degree murder, which carries a punishment of death or life without the possibility of probation or

---

[1] Appellate counsel did not discuss the waiver in his initial brief or in reply to the State's argument. Counsel did not acknowledge the waiver or make any argument that the waiver was ineffective. We remind counsel of his duty of diligence.

parole. *See* Section 565.020, RSMo 2016. In accordance with the agreement, the circuit court entered a conviction for the lesser crime of second-degree murder and imposed a sentence of life imprisonment with the possibility of parole. Humphrey received the benefit of the bargain when the circuit court entered its judgment reducing Humphrey's charge and imposing the recommended sentence. *See Sanning*, 271 S.W.3d at 58–59. Therefore, we will not hesitate in holding Humphrey to his part of the bargain, which included a waiver of his right to a direct appeal. *Id*.

Although Humphrey initially expressed that he was unaware of the waiver, the circuit court gave him the opportunity to clarify the terms of the agreement with his counsel. After his discussion with his counsel, Humphrey represented to the circuit court that he understood the terms of the agreement and wished to proceed. We find that the record sufficiently demonstrates Humphrey's intention to voluntarily waive his right to a direct appeal. *See Edwards*, 785 S.W.2d at 705. As a result, we must dismiss the appeal. *See Sanning*, 271 S.W.3d at 59.

**Conclusion**

For the foregoing reasons, we dismiss the appeal.

John P. Torbitzky, J.

Gary M. Gaertner, Jr. P.J.,
and Thomas C. Clark II, J. concur.